IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL PAXTON and BROOKE PAXTON, | ) ) ) Civil No.: 3:17-cv-01944-JE ) |
| Plaintiffs, | ) OPINION AND ORDER ) |
| v. | ) ) |
| DISH NETWORK, LLC and DISH NETWORK SERVICES, LLC, | ) ) ) ) |
| Defendants. | ) ) |

JELDERKS, Magistrate Judge:

Plaintiffs *pro se* Michael and Brooke Paxton bring this action against Defendants DISH Network, LLC ("DISH Network") and DISH Network Services, LLC ("DNS"), collectively ("DISH"). Plaintiffs originally filed their Complaint on August 10, 2017 in Washington County Circuit Court for the State of Oregon. Defendants removed the action to this court on December 5, 2017 based upon diversity jurisdiction. On December 13, 2017, Defendants filed a motion to transfer venue to the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. §1404(a). On March 9, 2018, after the motion to transfer venue was fully briefed, Plaintiffs filed a motion for leave to amend their Complaint. On April 3, 2018, without leave of the Court, Plaintiffs filed a purported Amended Complaint. The Court issued an Order indicating that the

OPINION AND ORDER – 1

Amended Complaint would not be filed since leave had not been given by the Court. For the reasons that follow, Defendants' motion to transfer venue is granted and Plaintiffs' motion for leave to file an Amended Complaint is denied as moot.[1]

**Background**

Until 2009 Plaintiffs were both owners of the Oregon corporation, A PDX Pro Co., Inc. ("PDX"). (Decl. of Norman Hawkins ¶¶12-13, Ex. 3). In October 2009, Mr. Paxton transfered all of his interest in the company to Mrs. Paxton and she became the sole owner and President. (Id.). Mr. Paxton continued as an employee of PDX. (Hawkins Decl. Ex. 3).

DISH Network and DNS are both Colorado limited liability companies with their principal places of business in Englewood, Colorado. (Notice of Removal at 4(c)-(d)). The sole member of each LLC is DISH DBS Corporation, a Colorado corporation also with its principal place of business in Englewood, Colorado. (Id.).

PDX and DNS entered into a series of Installation Service Agreements beginning in December 2004. (Hawkins Decl. ¶¶ 10, 11, 14). Michael Paxton executed the 2004 and 2006 agreements on PDX's behalf as its President. (Hawkins Decl. ¶¶ 10-11). Brooke Paxton executed a 2009 Installation Agreement on PDX's behalf as its President. Mrs. Paxton also executed a 2010 DISH Network Retailer Agreement with DISH in which PDX agreed to market DISH

---

[1] "[B]ecause a motion to transfer venue [ pursuant to 28 U.S.C. § 1404(a)] does not address the merits of the case . . . it is a non-dispositive matter that is within the province of a magistrate judge's authority" under 28 U.S.C. § 636(b)(1)(A). *Corrinet v. Burke*, No. 6:11–cv–06416–TC, 2012 WL 1952658, at *6 (D. Or. Apr. 30, 2012); *Shenker v. Murasky*, 1996 WL 650974, at *1 (E.D.N.Y. Nov. 6, 1996) ("An order issued by a magistrate judge transferring venue under 28 U.S.C. § 1404(a) is non-dispositive."); *Holmes v. TV–3, Inc.*, 141 F.R.D. 697, 697 (W.D. La. 1991) ("[a motion to transfer venue] is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor is it dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure"); *Cantley v. Radiancy, Inc.*, 2016 WL 4191889, at *6 (E.D. Cal. Aug. 8, 2016)(same); *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1241 (S.D. Cal. 2013)(same).

television programming. (Hawkins Decl. ¶¶ 15-16). Pursuant to the Installation Agreements, PDX performed work for DISH in Oregon and Washington. (Hawkins Decl. ¶ 9).

The 2009 Installation Agreement, which superseded the prior contracts between PDX and DISH and governed the business relationship between the two entities, contained a forum-selection clause. (Hawkins Decl. Ex. 5, ¶¶ 19-20). The clause provides, in pertinent part:

> This Agreement and the relationship between the parties, including all disputes and claims, whether arising in contract, tort or under statute, shall be governed by, interpreted under and enforced in accordance with the laws of the State of Colorado. The federal and state courts of the State of Colorado shall have exclusive jurisdiction to hear and determine any claims, disputes, actions or suits which may arise under or with respect to this Agreement. The parties agree and voluntarily consent to submit themselves to the personal jurisdiction and venue of such courts for such purposes.

(Ex. 5, ¶ 19). The Agreement is "binding upon the heirs, legal representatives, successors and assigns of [DNS] and [PDX]." (Ex. 5, ¶ 23).

DISH terminated PDX's contract in July 2011. (Hawkins Decl. ¶ 18, Ex. 7). On June 29, 2012, PDX brought a diversity action against DISH in the District of Colorado. (See *A PDX Pro Co., Inc. v. Dish Network Serv., LLC*, No. 12-CV-01699-RBJ (D. Colo. June 29, 2012), ECF Dkt. #2 Complaint at ¶¶ 5-6 and ECF Dkt. #56 Third Amended Complaint at ¶¶ 3-4).[2] Several of PDX's claims were dismissed upon motion and on summary judgment. After a jury trial, the court entered final judgment in favor of DISH and against PDX on the remainder of PDX's substantive claims. (*A PDX Pro Co., Inc. v. Dish Network Serv., LLC*, No. 12-CV-01699-RBJ, 2013 WL 3296539 at *6 (D. Colo. July 1, 2013); *A PDX Pro Co. Inc.,* 2014 WL 859431 at *9; *A PDX Pro Co., Inc.*, No. 12-CV-01699-RBJ ECF, Dkt. #204). Over $775,000 in fees and

---

[2] Although these documents are not included in the record, the Court takes judicial notice of the contents of the complaints filed in the District of Colorado action which are available through the online electronic court record system, PACER. *See* Fed. R. Evid. 201(b)(2) and 201(c)(1).

monetary sanctions entered against PDX in the Colorado action remain outstanding. (Hawkins Decl. ¶¶25-26).

## Discussion

Plaintiffs' Complaint is not a model of clarity. However, Plaintiffs' allegations center around their business relationship with Defendants. They assert that Defendants misclassified Plaintiffs as contractors while treating them as employees (Compl. generally); that Defendants owe them a "tremendous amount of money" for services rendered and equipment purchased from DISH (Compl. ¶¶ 31-34, 69); and that Defendants were unjustly enriched from profits that were gained as a result of not providing training on the use of the accounting and returns computer systems, not fixing what they allegedly knew were inaccuracies in the systems, and for requiring Plaintiffs to pay for equipment, shipping, and "bad returned equipment." (Compl. ¶ 67, 34).

Defendants argue that this action should be transferred to the District of Colorado because the 2009 Installation Agreement has a forum-selection clause that requires any dispute to be brought in Colorado and because Plaintiffs, through PDX, have already brought and had resolved a nearly identical action against DISH in Colorado. Defendants further argue that none of the public-interest factors that the Court must consider in evaluating the motion to transfer constitute the extraordinary circumstances necessary to disregard the forum-selection clause and defeat transfer.

Plaintiffs' Response, as with their Complaint, is lacking in clarity and is largely a reiteration and expansion of their allegations against Defendants. However, the relevant assertions that can be gleaned from their briefing are that: (1) they, as individuals, have not taken legal action against DISH; (2) they, as individuals, are not in business with and have no legal

obligation to DISH; (3) PDX never took legal action against DISH alleging that DISH was Plaintiffs' employer or that DISH violated the FLSA or Oregon law;(4) there is no contract between Plaintiffs and DISH; (5) Plaintiffs did not "negotiate" the contract they signed with DISH; and (6) DISH violated Oregon law and all matters in the case occurred in the state of Oregon.

## I. Standards

Under 28 U.S.C. §1404(a), a district court may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

The presence of a valid forum-selection clause alters a court's analysis when considering a motion to transfer under §1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63, 134 S. Ct. 568, 581 (2013). Unlike in situations where there is no valid forum-selection clause, the court does not consider the plaintiff's choice of forum or arguments regarding the parties' private interests. *Id.* at 64. Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted" and "a district court may consider arguments about public-interest factors only." *Id.* at 63-64. As a result, the court "should ordinarily transfer the case to the forum specified in that clause [and] [o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62.

The public-interest factors a court must consider include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on people of a community that has no relation to the controversy; (3) local interest in having localized controversies decided at home;

(4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary problems in conflicts of law. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986) *superseded by statute on other grounds by* 28 U.S.C. § 1391. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. *Atl. Marine Const. Co.*, 571 U.S. 49 at 64.

## II. Analysis

This Court must therefore determine (1) if venue is proper in the District of Colorado; (2) whether or not the forum-selection clause in the 2009 Installation Agreement is valid and enforceable against all Plaintiffs and Defendants; and, if so, (3) whether or not the public-interest factors that must be considered overwhelmingly disfavor a transfer.

### A. Venue

Under 28 U.S.C. §1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." A defendant corporation resides, for venue purposes, wherever it is subject to personal jurisdiction at the time the action commenced. 28 U.S.C. § 1391(c). DISH Network and DNS have their principal place of business in Englewood, Colorado and are, therefore, subject to the District of Colorado's general personal jurisdiction. Accordingly, Plaintiffs could have brought their action in the District of Colorado and transfer to that District is permissible under 28 U.S.C. §1404(a).

### B. Validity and Enforceability of the Forum-Selection Clause

Plaintiffs contend that they are not parties to the 2009 Installation Agreement in their personal capacities. They further argue that the 2009 Installation Agreement was not negotiated.

OPINION AND ORDER – 6

I interpret these assertions as opposition to enforcement of the 2009 Installation Agreement's forum-selection clause against them.

Plaintiffs' implication that the forum-selection clause is not valid because they did not negotiate with DISH prior to signing the 2009 Installation Agreement is far from compelling. The 2009 Installation Agreement was the third of such agreements that Plaintiffs signed on behalf of their company, PDX. There is no evidence that the Plaintiffs did not do so freely. Furthermore, the agreements were terminable at will. (Hawkins Decl. Exs. 1, 2, 5).

As Defendants correctly point out, negotiation is not a necessary element for the formation of a contract under either Colorado or Oregon law. (Def. Reply at 3, citing *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) and *Glaser v. Haskin*, 13 P.2d 1071, 1074 (Or. 1932)). Plaintiffs freely signed the 2009 Installation Agreement and were free to terminate it at any time for any reason. Forum-selection clauses are presumptively valid absent "compelling and countervailing reason[s]" to overturn them. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)(citations omitted). Those reasons do not exist here and I, therefore, conclude that the forum-selection clause is valid and enforceable.

Plaintiffs also appear to assert that even if the forum-selection clause is valid and enforceable, it is not enforceable against them in their individual capacities since the agreement was made between PDX and DNS.

The Ninth Circuit has adopted the approach that when the alleged conduct of non-parties to the underlying contract is "closely related to the contractual relationship" those non-parties should be bound by the forum-selection clause of that agreement. *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514, n. 5 (9th Cir.1988); *Graham Tech. Solutions,* 949 F.Supp. 1427, 1434 (N.D. Cal. 1997).

Here, Michael and Brooke Paxton are the sole owners of PDX. One or the other of them signed the Installation Agreements with DISH on behalf of PDX. Both Plaintiffs corresponded with DISH on behalf of and as agents of PDX. (*See* Hawkins Decl. Exs. 3, 4, 8). Plaintiffs were, therefore, inextricably involved in every aspect of PDX's contractual relationship with DISH. Furthermore, the claims they now assert in their individual capacities relate to the rights and duties arising from the contractual relationship between PDX and DISH. *See Graham Tech. Solutions,* 949 F.Supp. 1427, 1433 (N.D. Cal. 1997) (upholding a forum-selection clause where claims alleged in the complaint relate to the interpretation of the contract) (citing to *Manetti-Farrow, Inc.,* 858 F.2d at 514). Accordingly, I conclude that the Plaintiffs' conduct was so closely related and integral to PDX's relationship with DISH that Plaintiffs are bound by the forum-selection clause in the 2009 Installation Agreement.

Likewise, DISH Network is also bound by the forum-selection clause although it is not a signatory to the contract. Both DISH Network and DNS, which did sign the 2009 Installation Agreement, are wholly- owned subsidiaries of the same corporation, their interests in this litigation are the same. DISH Network concedes that it is bound by the forum-selection clause. Based on the record and in the interests of judicial efficiency, I conclude that both Defendants are also bound by the forum-selection clause.

**C. Public-interest factors under §1404**

Having concluded that the forum-selection clause in the 2009 Installation Agreement applies to Plaintiffs and Defendants, the Court must next consider whether the forum-selection clause is nonetheless defeated due to public-interest factors that "overwhelmingly disfavor" transfer to the chosen forum. *Atl. Marine Const. Co.*, 571 U.S. 49 at 67.

Defendants' motion discusses the five public-interest factors iterated in *Decker Coal* (supra). Plaintiffs' do not address the issues of court congestion and the imposition of jury duty. Defendants assert that these two factors weigh in favor of transfer. I conclude, based on the very similar caseload statistics of the two districts and the relationship and history of the parties with the Colorado district, that these two factors do not disfavor transfer.

Plaintiffs address the remaining three factors only by asserting that Defendants "disrespected" Oregon law; that "all matters in the case occurred in [the] state of Oregon" and "most all" of Plaintiffs' witnesses and all of Defendants' witnesses are in Oregon. (Pl. Resp. at 7-8).

Plaintiffs' argue that this action should not be transferred because Defendants' "disrespected" Oregon law. The only Oregon statute that Plaintiffs cite in their Complaint is ORS 670.600, which defines the nature of an independent contractor under Oregon law. Regardless of the merits of Plaintiffs' claim, their argument fails for two reasons. First, the 2009 Installation Agreement's forum-selection clause clearly states that "all disputes and claims, whether arising in contract, tort or under statute, shall be governed by, interpreted under and enforced in accordance with the laws of the State of Colorado." (Hawkins Decl. Ex. 5, ¶ 19). Second, even if a question of Oregon state law arose, the ability to resolve it would not likely lie outside the capabilities of a federal judge sitting in Colorado. *See Atl. Marine Const. Co.,* 571 U.S. 49 at 67 ("federal judges routinely apply the law of a State other than the State in which they sit."). Thus, neither the factor of the transferee court's familiarity with applicable law nor the conflict of law factor weigh against transfer.

Plaintiffs' argument that "all matters" occurred in Oregon does go to the weight given to the public-interest factor that looks to the "local interest in having localized controversies

OPINION AND ORDER – 9

decided at home." *Decker Coal Co.,* 805 F.2d at 843. Plaintiffs are Oregon residents and PDX is an Oregon corporation. Plaintiffs performed installation services through PDX in Oregon and Washington. (Hawkins Decl. ¶9). It is true that these facts weigh against transfer. However, viewing the record as a whole, that weight is insufficient to overcome the valid forum-selection clause, the countervailing weight of the remaining public-interest factors and the high burden Plaintiffs bear "of establishing that transfer to the forum for which the parties bargained is unwarranted."*Atl. Marine Const. Co.*, 571 U.S. at 63.

Finally, in the face of a valid forum-selection clause the court must disregard arguments regarding the location of witnesses. "Sources of proof" are a private-interest factor that the court "must deem . . . to weigh entirely in favor of the preselected forum." *Id.* at 64.

In sum, the public-interest factors here do not "overwhelmingly disfavor" transfer and this is not the "exceptional case" that warrants disregard of a valid forum-selection clause. Accordingly, Defendants' motion is granted.

## **Conclusion**

For the reasons set forth above, Defendants motion to transfer venue [Dkt. #17] is GRANTED and Plaintiffs' motion for leave to file an amended Complaint [Dkt. #25] is DENIED as moot. The Clerk of the Court is directed to transfer this action to the United States District Court for the District of Colorado.

DATED this 24th day of April, 2018.

                                                        /s/ John Jelderks
                                                        John Jelderks
                                                        U.S. Magistrate Judge